FILED

2007 Jul-27  PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STACY M. STOKES, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:05-CV-02226-LSC |
| | ] | |
| SOUTH CENTRAL STEEL, INC., et al., | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment,
which was filed on April 16, 2007, by defendants South Central Steel, Inc.
("SCS"), and Roger Ricks ("Mr. Ricks").  (Doc. 29.)  Plaintiff Stacy M. Stokes
("Ms. Stokes") has sued SCS and Mr. Ricks for violations of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, invasion of privacy,
assault, and battery.  (Doc. 1.)  Defendants have moved for summary
judgment on all of Plaintiffs' claims.  (Doc. 29.)  The issues raised in
Defendants' motion for summary judgment have been briefed by both
parties and are now ripe for decision.  Upon full consideration of the legal

arguments and evidence presented, Defendants' motion will be granted in part and denied in part.

II.    Motions to Strike.

As a preliminary matter, the Court will address the evidentiary motions filed in this action.  Defendants have filed two motions to strike portions of the affidavits/statements of Stacy Stokes, Haley Wright, Eric Heaton, and Michelle Smith.  (Docs. 38, 39.)  In their motions to strike, Defendants identify specific statements they want stricken and argue that the testimony is conjecture, hearsay, conclusory, subjective belief, not reasonably based on personal knowledge, irrelevant, and/or inconsistent with prior deposition testimony.  For the reasons outlined below, the motions will be denied.

Defendants allege that three statements in Stacy Stokes' affidavit conflict with her prior deposition testimony.  In this circuit, "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).  An examination of each of

the disputed statements, however, shows that the alleged conflicts do not meet the standard outlined in *Van T. Junkins & Assocs.*

First, Defendants argue that Ms. Stokes' statement: "Around the same time, Mr. Ricks had also made an inappropriate comment about my appearance," contradicts her previous deposition testimony that listed only Mr. Ricks' question, "what are you good at?" as an instance of verbal sexual harassment.  (Doc. 38 at 8.)  Because Ms. Stokes' new allegation does not say what Mr. Ricks actually said about her appearance, it is not helpful—and this Court cannot say with any certainty that it contradicts previous testimony and/or creates any genuine issue of fact in this matter.

Defendants also contend that Ms. Stokes' assertion that Mr. Ricks "kept asking me over and over and over 'What are you good at?' [And, b]ased on his tone and inflection, it was apparent that he was asking this question in a sexually suggestive manner," contradicts her earlier testimony in which she described him saying "what are you good at?" twice and said she took the comment the "wrong way."  (Doc. 38 at 9.)  The Court notes, however, that on page 330 of her deposition, Ms. Stokes testifies that she "took [Mr. Ricks' question, 'what are you good at?'] to be sexual";

therefore, no contradiction has been shown in that respect.  And, to the extent Defendants argue that it matters whether Mr. Ricks asked the question two times or "over and over and over," there has been absolutely no indication that the difference is material.

Finally, Defendants move to strike the statement: "Mr. Ricks told me that my co-workers would be fired if they helped me with certain aspects of my job."  Defendants argue that the allegation, raised for the first time in the affidavit, conflicts with previous testimony in which Plaintiff said that she had testified to everything in her deposition that she contended was retaliatory conduct.  (Doc. 38 at 9.)  However, in support of their motion to strike, Defendants have not pointed this Court to the page on which Ms. Stokes allegedly gave her "clear answer" to an "unambiguous question" that "negate[d] the existence of any genuine issue of material fact."  Instead, Defendants cite to a portion of Plaintiff's testimony regarding sexually harassing conduct—not retaliatory conduct.  (*Id.* (citing Pl. Dep. at 314-25).)  Therefore, Defendants have not met their burden to show that Plaintiff's new statement should be stricken as materially inconsistent with prior testimony.

Defendants have also moved to strike the statements of previous SCS female employees who claim that they were also sexually harassed by Mr. Ricks in the course of their employment with the company.  Defendants cite *Goff v. Cont'l Oil Co.*, 678 F.2d 593, 596-97 (5th Cir. 1982), as support for the proposition that the statements of former employees of SCS are not relevant to Plaintiff's discrimination claims.  *Goff* is, of course, non-binding on this Court, and Defendants have not cited any Eleventh Circuit law on the subject.

In *Goff*, the Fifth Circuit Court of Appeals upheld the district court's decision to exclude as irrelevant the testimony of former employees regarding alleged discrimination by the defendant corporation.  The Fifth Circuit noted that the plaintiff's claim was one of individualized discrimination, none of the former employees worked with the plaintiff in his division, none of the witnesses observed the incidents claimed by the plaintiff, and none of the individuals' testimony would have concerned the same supervisors complained of by the plaintiff.  *Id.*

*Goff* is clearly distinguishable from this case.  Here, Haley Wright and Michelle Smith have discussed the alleged sexually harassing actions of Mr.

Ricks as their supervisor and as sole owner of SCS—the only alleged harasser in this matter.  Mr. Ricks has testified that he does not stare at women's crotches when he speaks to them (Ricks Dep. at 108); he does not yell, scream, or curse at his employees (*id*. at 118-19); and he has not rubbed his "front area" against the buttocks of his female employees (*id*. at 152).  Ms. Wright and Ms. Smith have made statements to the contrary.  At the very least, their testimony may be relevant as impeachment evidence.

To the extent Defendants argue that a declarant's testimony is otherwise irrelevant, lacking personal knowledge, conclusory, or improper in any other manner, the Court has noted and considered these characterizations.  The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, *see Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by this Court when making its final decision on Defendants' summary judgment motion.

III.    Facts.[1]

Plaintiff Stacy Stokes began her employment with SCS in February 2004 as a receptionist.  At the time of her hire, Ms. Stokes' job duties included answering the telephone, receiving and transmitting faxes, general secretarial responsibilities, and running drawings and cut lists.

SCS is a heavy industrial steel fabricator that furnishes steel for commercial buildings.  At all times relevant to this action, SCS had fewer than one hundred employees.   Roger Ricks is SCS's president and sole shareholder.

Ms. Stokes alleges that within the first week of her employment, Mr. Ricks slid behind her in the copyroom while she was standing at a table and rubbed his front "private area" against her buttocks, even though there was sufficient room for him to pass by with no physical contact.  Less than a minute later, Mr. Ricks again stepped sideways behind her and rubbed the

_____

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

front of his body against her.  This time, Mr. Ricks said "excuse me."
Although Ms. Stokes believed that the first contact may have been an
accident, she became convinced after the second pass that Mr. Ricks'
conduct was intentional.

Ms. Stokes did not say anything to Mr. Ricks about the copyroom
incident; instead, she complained to a coworker, Mike Miller.  Mr. Miller told
her to speak with one of her supervisors:  office manager, Kim Revis.  While
SCS had a general policy prohibiting "harassment" generally, the company
did not have a specific policy regarding sexual harassment.  Moreover, there
was no policy or procedure written or provided to employees on how to
report possible sexual harassment.  When Ms. Stokes complained to Ms.
Revis, the office manager suggested that Ms. Stokes wear less revealing
clothing to work, and explained that in the past, Mr. Ricks looked down the
front of her own low-cut blouse.  Ms. Revis did not report Ms. Stokes'
complaint to Mr. Ricks.

Plaintiff claims that on or around February 23, 2004, Mr. Ricks
repeatedly brushed his hand against the outside of her thigh while she stood
next to him in his office and he explained how to "run weights."  Mr. Ricks

then asked her to sit next to him, which she did.  Ms. Stokes claims that she

subsequently felt Mr. Ricks' foot rubbing her calf, so she kicked him.  Ten

minutes later, she asked to be excused for an appointment, and she left the

office.   Ms. Stokes later told Ms. Revis about this incident, but again,

nothing was done.  Ms. Revis testified that she believed her conversations

with Ms. Stokes were merely talks between two women, and she admitted

she had no training on how to handle complaints of workplace harassment.

Plaintiff alleges that on a number of occasions, Mr. Ricks stared at her

breast and/or crotch area.  Ms. Revis, who has since left SCS, has also

testified that Mr. Ricks stared at her breasts and that she joked with other

employees that Mr. Ricks was a "crotch starer."

Ms. Stokes maintains that Mr. Ricks was verbally abusive.  She admits

that he was an "equal opportunity abuser" with regard to yelling and cursing

at the employees, but testified that he was kind to her until she rejected his

alleged advances and kicked him.  Plaintiff also claims that one day, when

she sought help with a computer problem and told Mr. Ricks that she was

not good with computers, he asked her, "well, tell me what you are good

at." In light of the other incidents outlined above, Ms. Stokes interpreted this exchange as having a sexual connotation.

On March 11, 2004, Plaintiff's counsel sent a letter to SCS that demanded Mr. Ricks stop sexually harassing Ms. Stokes and threatened legal action for such conduct.  Eleven days later, on March 22 an office memorandum was issued requiring that all of Ms. Stokes' work be channeled through either Mr. Ricks or Ms. Revis.  Ms. Stokes was also ordered to direct any of her questions regarding accounting or computer issues to Mr. Ricks or Ms. Revis.  Plaintiff maintains that Mr. Ricks subsequently began criticizing her work and ignoring her requests for assistance or instruction.  Mr. Ricks, himself, testified that he began documenting Ms. Stokes' errors.  Plaintiff filed an EEOC charge alleging sexual harassment on April 13, 2004.

Over time, Ms. Stokes was asked to perform fewer and fewer tasks. SCS claims that Ms. Stokes made numerous errors in cut lists, but she composed cut lists (albeit, less of them) until the end of her employment with the company.  Ms. Revis testified that much of the work Ms. Stokes had performed, such as copying drawings and entering data, went to her while the plaintiff was left at her desk with little or nothing to do.  She also stated

that Mr. Ricks told her he wanted Ms. Stokes to quit.  After a time, Ms. Stokes' only real job duty was to answer the phone.

Plaintiff resigned from her position at SCS on September 7, 2004.  She filed an additional EEOC charge on December 28, 2004, which alleged unlawful retaliation and constructive discharge.

IV.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.    Analysis.

      A.    Title VII.

           1.    Sexual Harassment.

There are two kinds of Title VII sexual harassment claims: "(1) quid pro quo, which are 'based on threats which are carried out' or fulfilled, and

(2) hostile environment, which are based on 'bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000).  In this case, Plaintiff alleges that she was subjected to a hostile work  environment (Doc. 34 at 16), and Defendants have moved for summary judgment on that claim.

In order to establish a hostile environment claim based on sex discrimination, a plaintiff must show: (1) that she belongs to a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment was based on her sex, (4) that the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable.  *Mendoza v. Borden Inc.*, 195 F.3d 1238, 1245 & 1248 n.5 (11th Cir. 1999); *see also Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1502-03 (11th Cir. 1985).  Defendants contend that they are entitled to summary judgment because: (1) any alleged harassment was not based on Ms. Stokes' sex, and (2) the alleged harassing conduct was not sufficiently severe and pervasive.  (Doc. 30.)

The requirement "that the conduct complained of was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment'[] is the element that tests the mettle of most sexual harassment claims." *Gupta*, 212 F.3d at 583 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere 'general civility code.'" *Id*. "Accordingly, a plaintiff must establish not only that she subjectively perceived the environment to be hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive." *Id*. (citing *Mendoza*, 195 F.3d at 1246; *Faragher*, 524 U.S. at 788). The Court believes that Ms. Stokes subjectively perceived her environment to be hostile and abusive; therefore, we examine whether that perception was objectively reasonable.

In this circuit, there are "four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct

Page 14 of 27

unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.  This Court "should examine the conduct in context, not as isolated acts, and determine whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Id.*

The sexual harassment Plaintiff alleges in support of her hostile environment claim includes: (1) one occasion in which Mr. Ricks rubbed his front "private area" twice against Ms. Stokes' buttocks while passing behind her in the copy room; (2) one instance when Mr. Ricks repeatedly ran the back of his hand along Ms. Stokes' thigh and rubbed his foot on her calf; (3) one occasion in which Mr. Ricks asked Ms. Stokes, "what are you good at?"; and (4) regular interactions wherein Mr. Ricks would stare at Plaintiff's breasts and/or crotch.  (Doc. 34 at 17-18, 21.)  The Court finds that this conduct is similar to the harassment alleged by the plaintiff in *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999)[2]—conduct that the Eleventh Circuit

---

[2]In *Mendoza*, the plaintiff presented evidence of: "(1) one instance in which [the supervisor] said to [the plaintiff] 'I'm getting fired up'; (2) one occasion in which [the supervisor] rubbed his hip against [the plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [the supervisor] made a sniffing sound while looking at [the plaintiff's] groin area and one instance of sniffing without looking at her groin;

Court of Appeals determined was not sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

As in *Mendoza*, this Court questions whether all the conduct alleged in this case "includes the necessary sexual or other gender-related connotations to be actionable sex discrimination." 195 F.3d at 1247. The question "what are you good at?" could have a sexual inference in some instances, but in this case, Plaintiff has testified that the statement was made in response to her seeking computer assistance from Mr. Ricks and commenting that she was not good with computers. Like the plaintiff in *Mendoza*, Ms. Stokes approached Mr. Ricks, not the other way around, and another employee was present in his office when the question was asked. *See id*. at 1248. "Thus, the circumstances of this interaction do not objectively indicate that the statement . . . had a sexual or other gender-related connotation." *Id*.

---

and (4) [the supervisor's] 'constant' following and staring at [the plaintiff] in a 'very obvious fashion.'" 195 F.3d at 1247.

However, even if this Court assumes that the conduct alleged by the plaintiff in this case was sexual in nature, Plaintiff's hostile environment claim does not survive the application of the four factors outlined in *Mendoza*.  Ms. Stokes has not presented evidence that any of Mr. Ricks' sexual misconduct was physically threatening or humiliating, or that the conduct as a whole unreasonably interfered with her job performance.  *See Mendoza*, 195 F.3d at 1248-49.  The alleged touchings and one verbal incident were not frequent; they all occurred within approximately the first month of Plaintiff's employment, and Ms. Stokes worked for SCS for around seven months total.

Most importantly, however, none of the alleged conduct is severe.  *See id*. at 1249.  The instances in which Mr. Ricks is alleged to have touched Ms. Stokes in a physical manner were isolated, brief, and unaccompanied by any smiles, propositions, or sexually suggestive comments.  The most frequent and egregious conduct—Mr. Ricks' staring at Plaintiff's breasts and/or crotch—while offensive and boorish, simply is not, when considered in combination with the other misconduct alleged, severe or pervasive enough to meet the minimum levels of conduct required by this circuit and others.

*See, e.g.*, *Mendoza*, 195 F.3d at 1246-47 (listing case law from other circuits and the types of misconduct that have been found to be insufficient to support a hostile environment claim).   Therefore, summary judgment will be granted on Plaintiff's hostile environment claim.

      2.    Retaliation.

Plaintiff also contends that Defendants retaliated against her in violation of Title VII after she complained about Mr. Ricks' sexually harassing conduct.   In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events."   *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).   Defendants argue that Plaintiff has failed to establish that she suffered adverse actions sufficient to present her retaliation claim to a jury.   (Doc. 30 at 17-23.)

Recently, in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), the U.S. Supreme Court defined adverse employment actions in the context of a retaliation claim as an employer's actions that are "materially adverse to a reasonable employee or job applicant."   *Id*. at

2409.  In other words, the "actions must be harmful to the point that they

could well dissuade a reasonable worker from making or supporting a charge

of discrimination." *Id*.  "[N]ormally[,] petty slights, minor annoyances, and

simple lack of good manners will not create such deterrence." *Id*. at 2415.

The Supreme Court emphasized, however, that "context matters." *Id*.

"[T]he significance of any given act of retaliation will often depend upon

the particular circumstances." *Id*.

The evidence in this case, taken in the light most favorable to the

plaintiff, indicates that after Ms. Stokes' attorney sent a letter to SCS on

March 11, 2004, demanding that all sexually harassing behavior cease: (1)

Mr. Ricks issued an office memorandum requiring that all of Ms. Stokes'

work be channeled through him, or if the issue had to do with invoices or

accounting, through Ms. Revis; (2) the same memorandum mandated that

Ms. Stokes direct all of her questions to Mr. Ricks or Ms. Revis regarding

accounting and computer issues; (3) Mr. Ricks began "keeping up" with Ms.

Stokes' errors and created a file for that purpose (Ricks Dep. at 220-21); (4)

when Ms. Stokes asked Mr. Ricks for assistance, he ignored her or refused to

help; and (5) in time, all of Ms. Stokes' job duties except answering the

phone, and limited cut list work, were reassigned to other employees.[3] Collectively, these facts do not amount to "minor annoyances," and they are sufficient to create a jury question as to whether Defendants' actions constitute actionable retaliation for her complaints of sexual harassment.[4]

### 3.   Constructive Discharge.

Plaintiff claims that the sexual harassment and retaliatory actions she suffered were so egregious that she was, in effect, constructively discharged from her position at SCS.   "A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (quoting *Poole v. Country Club of Columbus, Inc.*, 129

---

[3]Kim Revis, the office manager, testified: "I had to do the majority of [Ms. Stokes' past duties].  A lot of my time was split between running copies of the drawings and different things of that sort . . . [and a]ll the data entry that she was doing for me was now 100 percent back to me."  (Revis Dep. at 70, 72.)  Ms. Revis also said that as Ms. Stokes' supervisor: "As far as I know, when she decided to leave South Central Steel, the only duty that she had was to answer the phone."  (*Id.* at 67.)

[4]Defendants argue that they have shown legitimate, nondiscriminatory reasons for assigning fewer cut lists to Ms. Stokes—namely, that she made multiple errors while creating cut lists.  (Doc. 30 at 21; 37 at 8.)  However, Defendants also maintain that Plaintiff continued to work on cut lists until she left SCS, and Defendants do not proffer additional legitimate, nondiscriminatory reasons for the removal of Ms. Stokes' other job responsibilities.

F.3d 551, 553 (11th Cir. 1997)).  Moreover, the "standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1282 (11th Cir. 2003) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1231 (11th Cir. 2001)).  And, the facts of this case simply do not meet that standard.

This Court has already concluded that Plaintiff has not adduced sufficient evidence in support of her hostile environment claim.  Further, while the alleged retaliatory actions Ms. Stokes suffered may well deter a reasonable person from making or supporting a charge of discrimination, those actions—even when considered in combination with the alleged instances of sexual harassment she endured—do not constitute "intolerable" working conditions.  Therefore, summary judgment will be entered on the constructive discharge claim.

B.    Alabama State Law Claims.

Finally, Plaintiff has asserted state law claims of invasion of privacy, assault, and battery against Mr. Ricks, and she contends that SCS is vicariously liable for the tortious conduct.

1.    Invasion of Privacy.

Although Defendants' motion requests summary judgment on all of Plaintiff's claims, Defendants' memoranda do not present any legal argument or citation to evidence in support of summary judgment concerning the state-law invasion of privacy claim.  (Docs. 30, 37.)  In fact, the invasion of privacy claim is never mentioned.  The parties moving for summary judgment bear the initial burden of presenting to the Court the basis for their motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Because Defendants have not met this burden, summary judgment must be denied with regard to Count IV of Plaintiff's Complaint.

2.    Assault.

Plaintiff argues that Defendants are liable for assault because Mr. Ricks told her that he had a gun in his office and, on a separate occasion, said in her presence while he walked a salesman out the door, "I have killed before and I could kill again."  (Doc. 34 at 28-29.)  Ms. Stokes claims that these actions put her in fear for her life.

"An assault consists of ' . . . an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances

as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'"  *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990) (quoting *Holcombe v. Whitaker,* 318 So. 2d 289, 294 (Ala. 1975)) (internal citations omitted).  "Words standing alone cannot constitute an assault.  However, they may give meaning to an act, and when both are taken together they may create a well-founded fear of a battery in the mind of the person at whom they are directed, thereby constituting an assault."  *Id*. at 351-52.

In this case, there is no evidence that Mr. Ricks' words were accompanied by any threatening physical actions toward the plaintiff. Moreover, there are no objective indications that Mr. Ricks' statement that he "could kill again" was directed at Ms. Stokes—and not merely overheard by the plaintiff as she sat at her desk near the door.  In fact, Ms. Stokes testified that when he made the alleged offensive statement, Mr. Ricks was discussing his service in Vietnam as he walked a salesman out the door.  She admits she had her head down, the comment was not made to her, and Mr. Ricks never made any reference to her when he made the statement.  (Pl.

Dep. at 335-36.)  No reasonable jury could conclude that Mr. Ricks' words in these instances were sufficient to create a well-founded fear of an imminent battery.   Defendants, therefore, are entitled to summary judgment on Plaintiff's assault claim.

> 3.    Battery.

In order to succeed on a claim alleging battery under Alabama law, a plaintiff must establish:  "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner."  *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1193 (Ala. 1998) (citing *Surrency v. Harbison,* 489 So. 2d 1097, 1104 (Ala. 1986); Restatement (Second) of Torts § 18 (1965)). Defendants argue that Plaintiff cannot meet the third element of her claim because, while she has alleged a number of touchings by Mr. Ricks, there is no evidence that Mr. Ricks touched Ms. Stokes "in rudeness, or in anger, or in a hostile manner."  (Doc. 30 at 27; 37 at 10.)

However, "[a]n actual injury to the body is not a necessary element of a civil assault and battery," *Surrency*,  489 So. 2d at 1104, and the Alabama Supreme Court has found that evidence of unwanted sexual

touchings can constitute substantial evidence of battery, *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d at 1194.  Ms. Stokes has testified that Mr. Ricks rubbed his front private area against her buttocks twice, and rubbed the back of his hand against her thigh and touched his foot to her calf on another occasion.  Given the circumstances described in the record, a reasonable jury could conclude that the actions were unwelcome, intentional, and offensive.  Therefore, Plaintiff will be allowed to proceed with her battery claim against Mr. Ricks.

        4.    Vicarious Liability.

SCS maintains, however, that it cannot be held responsible for any battery committed by Mr. Ricks because the company did not ratify his actions.  (Doc. 26 at 61.)  An employer can be held liable for the intentional torts of an employee "if the employer ratifies the employee's conduct."  *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d at 1195.  "An employer ratifies conduct if the employer: (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted

sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation." *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992).

SCS contends that it is not liable for Mr. Ricks' intentional acts because "[a]n employer <u>cannot be said</u> to have ratified an employee's conduct when the employer, upon learning of an employee's conduct, which was not in the scope of the employee's employment, gives instructions calculated to prevent a recurrence."   (Doc. 30 at 29 (quoting *E. Ala. Behavioral Medicine, P.C. v. Chancey*, 883 So. 2d 162, 169-71 (Ala. 2003)) (emphasis made by the defendants).)  SCS, however, does not identify the instructions that were given to prevent a recurrence of Mr. Ricks' actions. In fact, SCS subsequently admits that Ms. Revis did not respond properly to Ms. Stokes' initial complaint about Mr. Ricks touching her in the copy room. (Doc. 30 at 30.)  Moreover, the evidence, taken in the light most favorable to the plaintiff, shows that after her first complaint to Ms. Revis, Mr. Ricks again touched Ms. Stokes inappropriately.

SCS has not met its burden to show that it is entitled to summary judgment on Plaintiff's claim that it is vicariously liable for battery; therefore, this claim will also go to a jury.

VI.   Conclusion.

For the reasons stated above, Defendants' motion for summary judgment is due to be granted in part and denied in part.  A separate order will be entered.

Done this <u>27th</u> day of <u>July 2007</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153